UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

SHAWN PEACE,                           :

                Petitioner,           :    **MEMORANDUM DECISION**

          - v -                       :    20-CV-389 (DC)

MARK ROYCE, Superintendent of the Green   :
Haven Correctional Facility,
                                  :

                Respondent.
                                  :
------------------------------------x

APPEARANCES:    SHAWN PEACE
                         Petitioner *Pro Se*
                         DIN 14A2487
                         Green Haven Correctional Facility
                         P.O. Box 4000
                         Stormville, NY  12582

                         LETITIA JAMES, Esq.
                         Attorney General of the
                         State of New York
                         By:    Paul B. Lyons, Esq.
                                Assistant Attorney General
                         28 Liberty Street
                         New York, NY  10005
                             Attorney for Respondent

CHIN, Circuit Judge:

        On May 22, 2014, following a jury trial, petitioner Sean Peace was

convicted in the Supreme Court of the State of New York, Queens County (Lasak, J.), of

one count of attempted second-degree murder, seven counts of first-degree robbery, four counts of first-degree assault, and four counts of criminal possession of a weapon. Dkt. 14-1 at 3. His convictions were affirmed by the Appellate Division, Second Department, *People v. Peace*, 74 N.Y.S.3d 502 (2d Dep't 2018) ("*Peace I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Peace*, 111 N.E.3d 1121 (N.Y. 2018) ("*Peace II*") (Rivera, J.).

On January 21, 2020, proceeding *pro se*, Peace filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Eastern District of New York (the "Petition"). *See* Dkt. 1. Respondent, represented by the New York State Attorney General's Office, filed its opposition to the Petition on February 4, 2021. Dkt. 14-1. On January 17, 2023, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

*STATEMENT OF THE CASE*

I. *The Facts*

The evidence at trial established the following:

Between July and December 2010, Peace participated in a series of robberies of several fast food restaurants in Queens and concluded his crime spree with the robbery and attempted murder of a livery cab driver. *See* Dkt. 14-1 at 3.

On July 15, 2010, Peace entered a McDonald's Restaurant and, after ordering a meal, walked around the counter, showed the manager a gun, and

2

demanded the manager give him all the money. The manager emptied approximately $1,500 from a safe into Peace's bag, and Peace fled. Photographs from video surveillance of the robbery were admitted into evidence, and at trial, the manager identified Peace as the robber from the photographs. *See* Dkt. 14-4 at 391-98.

On August 8, 2010, Peace went behind the counter at a Wendy's Restaurant and, after producing a gun, demanded the manager and employees open the safe and registers. *See id.* at 299; 301-04. After taking the money, he walked out. *See id.* at 305. Photographs from video surveillance of the robbery were admitted into evidence, and at trial, the manager identified Peace as the robber both in photographs and in the courtroom. *See id.* at 306-09.

On August 19, 2010, Peace sat down in a Popeye's Fried Chicken Restaurant, and after the manager asked if he needed help, grabbed the manager, showed him a gun, and demanded he give him the money in the safe and registers. The manager complied, but as Peace jumped the counter to leave, the manager grabbed him and the men engaged in a struggle, during which Peace shot the manager in the hand. *See id.* at 273-78. Video surveillance and photographs of the robbery were admitted into evidence, and at trial, the manager identified Peace in the courtroom as the robber. *See id.* at 280-88.

On November 19, 2010, Peace and another man entered a Burger King Restaurant and jumped over the counter. *See id.* at 319-321. Peace pushed the manager

3

against the wall and held her at gunpoint while the other man emptied the register. *See id.* at 321. Video surveillance of the robbery was admitted into evidence, but at trial the manager could not identify Peace as the gunman because the event was "too long ago," and she had only taken "a glimpse" of his face. *See id.* at 323, 327.

On November 21, 2010, Peace and two other men entered another McDonald's Restaurant. *See id.* at 352-55. While pointing a handgun toward the manager, Peace demanded that the manager open the safe and the register, and she did. The men took the money and fled. Photographs from video surveillance of the robbery were admitted into evidence, and at trial, the manager identified Peace in the courtroom as the robber. *See id.* at 356-61.

Finally, on December 3, 2010, Peace got into the passenger seat of a livery cab for a ride. *See id.* at 399-402. Upon arriving at the destination, Peace pulled out a gun and demanded the cab driver give him his money and the car. When the driver hesitated, Peace shot the driver in both legs, took money out of his pocket, and shot him in the neck. *See id.* at 403-05. An EMS paramedic in an ambulance nearby responded to the scene, removed the driver from the vehicle, and brought the driver to the hospital. *See id.* at 342-45; 406. The driver was left with permanent nerve damage to the left side of his face and body. *See id.* at 408. A surveillance video from the inside of the cab was admitted into evidence, and the driver testified at trial that Peace looked like the man who shot and robbed him. *See id.* at 410-15.

4

On January 11, 2011, Peace was apprehended in Buffalo, New York and taken into custody in Queens by Detectives Christopher Alger and Joseph Pidoto. *See id.* at 447-49. After waiving his Miranda rights, Peace admitted to robbing and shooting the livery cab driver. He gave the details of the robbery and requested that the detectives put his oral statement into writing. *See id.* at 453-60. He identified himself in photographs taken during the cab robbery and wrote "This is Shawn Peace in the livery cab" on the photographs. *See id.* at 463. Peace also admitted to and provided details of the armed robberies on July 15, August 8, and August 19, and his oral confession was put into a second written statement. *See id.* at 466-70. While giving the second statement, Peace identified himself in and wrote "This is me, Shawn Peace" or "This is Shawn Peace" on eight photographs. *See id.* at 470-75. During the same interview, Peace admitted to and provided details of the robberies on November 19 and November 21, and at his request, his confession was recorded as a third written statement. *See id.* at 475-77, 479-82. While giving the third statement, he identified himself in two photographs and wrote "This is me, Shawn Peace." *See id.* at 482-84. Peace signed all three statements, and they were admitted into evidence. *See id.* at 459-61; 468-70; 476-77.

## II. *Procedural History*

### a. *State Court Proceedings*

Trial commenced on January 14, 2014, before Queens County Supreme Court Justice Gregory Lasak and a jury. *Id.* at 75. Witnesses testified about each robbery, and photographs, videos, and signed statements by Peace were received into evidence. On May 22, 2014, Peace was convicted of one count of attempted second-degree murder, seven counts of first-degree robbery, four counts of first-degree assault, and four counts of criminal possession of a weapon. Dkt. 14-1 at 12. He was sentenced to an aggregate term of 110 years (reduced to 50 years by operation of law) and 5 years of post-release supervision. *Id.*

Represented by counsel, Peace appealed to the Appellate Division, Second Department on July 14, 2016. Dkt. 14-3 at 1-32. He claimed that (1) the court erroneously permitted Detective Alger to identify him from surveillance videos at trial; (2) counsel was ineffective for failing to object to the testimony and failing to request a jury instruction informing the jury that it could reject the testimony; (3) the court punished him for exercising his right to trial; and (4) his sentence was excessive. *See* Dkt. 14-1 at 14; Dkt. 14-3 at 21-31. In a supplemental *pro se* brief, Peace claimed that (1) his signed statements and the photographs were obtained in violation of his Fourth Amendment rights and (2) his counsel was ineffective because he (a) failed to inquire

6

about the lawfulness of his arrest, (b) never informed Peace that his case was going to trial, and (c) continuously displayed a lack of preparation for trial. Dkt. 14-3 at 96-100.

By decision dated May 30, 2018, the Appellate Division unanimously affirmed the convictions. *Peace I*, 74 N.Y.S.3d 502. The court rejected Peace's contention that Detective Alger identified him from the surveillance video at trial. *Id*. at 502. Rather, the court found that "the detective only testified that the defendant had identified himself from the surveillance footage" and that there was "no instance of improper bolstering or opinion testimony." *Id*. The court also found that Peace's ineffective assistance of counsel claims were "mixed" because they were based on information contained both on and off the record. *Id*. The court held that, based on the information on the record, there was no evidence that defendant was deprived of effective assistance of counsel and that, because there was matter raised outside the record, Peace should raise the claim in a motion to vacate judgment. *Id*. Next, the court held that Peace's argument that the court punished him for exercising his right to trial was meritless and that his sentence was not excessive. *Id*. at 502-03. Lastly, the court rejected the claim's raised in Peace's supplemental *pro se* brief. *Id*. at 503.

On June 18, 2018, Peace applied for leave to appeal to the New York Court of Appeals, raising the same claims he had raised in the Appellate Division. Dkt. 14-3 at 123. On September 13, 2018, the Court of Appeals denied leave to appeal. *Peace II*, 111 N.E.3d 1121.

7

On August 25, 2017, while his appeal to the Appellate Division was pending, Peace moved *pro se* in the trial court to vacate his judgment. Dkt. 14-3 at 133-45. He argued that the statements and photographs were obtained in violation of his constitutional rights because the detective had probable cause to obtain an arrest warrant but did not obtain one, and his counsel failed to have the evidence suppressed. *See id.* at 140-41. He also argued that he did not receive effective assistance of counsel for various reasons. *See id.* at 143-44.

On March 6, 2018, the court denied the motion to vacate judgment, finding that Peace's claims were procedurally barred because they were all record-based and pending before the Appellate Division. *See id.* at 198-200. The court noted, however, that if the Appellate Division found that the claims were not properly before it, Peace could return to seek relief after the direct appeal was decided. On March 13, 2018, Peace sought leave to appeal the denial of the motion to vacate the judgment and, on June 19, 2018, leave was denied. *See id.* at 202, 227.

There is no record that Peace filed a renewed motion to vacate judgment after the direct appeal.

### b. *Proceedings Below*

On January 21, 2020, Peace filed the Petition *pro se* in the Eastern District of New York claiming, as he raised on appeal to the Appellate Division, that he was denied a fair trial because of Detective Alger's lay-opinion testimony, that his signed

8

statement and the photographs introduced into evidence were fruits of an illegal arrest in violation of his Fourth Amendment rights, and that his counsel was ineffective for various reasons. *See* Dkt. 1. On July 29, 2020, Respondent filed a motion to dismiss Peace's ineffective assistance of counsel claims as unexhausted. Dkt. 9. On August 17, 2020, the district court issued an order giving Peace 45 days to advise the court on how to proceed with the unexhausted claims. *See* Dkt. 11. Peace did not respond. On December 28, 2020, the district court granted Respondent's motion to dismiss and deemed the petition amended to excise the ineffective assistance of counsel claims. *See* Docket Sheet at 4. On February 4, 2021, Respondent filed its opposition to the habeas petition addressing the two remaining claims. Dkt. 14-1.

On February 17, 2023, the court received a declaration from Peace asserting that he had not received any of the docket entries since filing the Petition on January 21, 2020, including Respondent's opposition and Respondent's motion to dismiss the unexhausted claims. Dkt. 15. In response, the court ordered Respondent to serve Peace with the relevant docket entries, and instructed Peace that if he so wished to, he could file a motion for relief from the order that excised his unexhausted claims as well as reply to Respondent's opposition. Dkt. 16. On April 5, 2023, Peace filed only a reply to Respondent's opposition. Dkt. 18.

9

## *DISCUSSION*

I.  *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

Purported evidentiary errors are rarely a basis for habeas relief. The Supreme Court has acknowledged its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). As trial judges are "called upon to make dozens, sometimes

10

hundreds of decisions concerning the admissibility of evidence" in any given criminal trial, "the Constitution leaves to the judges who must make these decisions 'wide latitude'" in ruling on the admissibility of evidence. *Id*. at 689 (citation omitted). Consequently, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citations omitted). The erroneous admission of evidence constitutes a denial of due process "only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed in the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (citation omitted).

As for a petitioner's claims under the Fourth Amendment, "where the State has provided an opportunity for full and fair litigation of [the] claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). Thus, a petitioner may obtain habeas relief arising from Fourth Amendment claims only if he either establishes that "'the state has provided no corrective procedures at all to redress the alleged fourth amendment violations,' or, 'if the state has provided a corrective mechanism,' that the petitioner 'was precluded from using that mechanism because of an unconscionable

11

breakdown in the underlying process.'" *Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)). To establish such a breakdown, the petitioner would have to prove that "the state system 'failed to conduct a reasoned method of inquiry into relevant questions of fact and law.'" *Hicks v. Bellnier*, 43 F. Supp. 3d 214, 231 (E.D.N.Y. 2014) (citing *Capellan*, 975 F.2d at 71).

## II. *Analysis*

We address the two remaining claims in Peace's habeas petition in turn: (1) the denial of a fair trial when the court purportedly permitted lay-opinion identification testimony from the detective, and (2) the denial of his right to due process when the signed statements and photographs were introduced into evidence.

### a. *The Denial of a Fair Trial*

Peace claims that he was denied a fair trial when the court permitted lay-opinion testimony from Detective Alger identifying Peace from photographs culled from surveillance videos. Dkt. 1 at 4-5. The Appellate Division considered this claim and found that Detective Alger simply testified that Peace, through his oral and written confessions, identified himself as the man shown in the photos and videos robbing the victims. *Peace I*, 74 N.Y.S. 3d at 502. The Appellate Division's finding is presumed correct, 28 U.S.C. § 2254(e)(1), and in any event, is supported by the record. Additionally, "[t]he prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'" *Burt v. Titlow*, 571 U.S.

12, 18 (2013) (quoting 28 U.S.C. § 2254(e)(1)). Furthermore, because the Appellate Division reviewed this claim on the merits, its decision is entitled to "substantial deference." *Fischer*, 780 F.3d at 560.

Peace's claim that Detective Alger identified him from the surveillance videos mischaracterizes the nature of the testimony, and he has provided no basis to rebut or undermine the court's factual findings. The trial transcript shows, for example, that Detective Alger testified as follows:

> Q: And once the defendant was confronted with those still frames during the interview, what did he do or say?
> A: He was shown each one of these still photographs, and he stated, "This is Shawn Peace in the livery cab," and he signed it stating that this was him.

Dkt. 14-4 at 463.

> Q: Turning to 11-A and 11-B, again the top being 11-A and the bottom being 11-B, do you recognize those pictures?
> A: Yes. Yes, I do.
> Q: What do you recognize those to be?
> A: Again, still photographs from a robbery inside of a commercial location.
> Q: Were they utilized during your discussion with the defendant?
> A: Yes, they were.
> Q: Can you explain how?
> A: Yes. He stated, "This is me, Shawn Peace," and again signed it.

*Id.* at 475.

Because Peace has not shown that there was an evidentiary error, it cannot be said that he was denied of a fundamentally fair trial. *Taylor*, 708 F.2d at 891.

Lastly, even if Detective Alger *did* identify Peace from the photographs and videos as Peace claims, the admission of that evidence would not, on its own, be sufficiently material to provide the basis for Peace's conviction or remove a reasonable doubt that would have existed without it. *See Johnson*, 955 F.2d at 181. There was a host of additional evidence supporting Peace's conviction, including the testimony of the eyewitnesses, the eyewitnesses' identifications of Peace from the photographs and videos and in court, and his own signed confessions.

Accordingly, Peace's fair trial claim fails.

### b. *Fourth Amendment Due Process Claim*

Peace also claims that he was denied his right to due process when his signed statement and photographs, which he contends were fruits of an illegal arrest, were introduced into evidence at trial. Dkt. 1 at 9-10. Habeas relief, however, is unavailable for purported Fourth Amendment violations where, as here, the state courts have provided the petitioner with a full and fair opportunity to litigate his claims. *See Stone*, 428 U.S. at 482; *see also Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief.").

14

Federal review of Fourth Amendment claims in habeas petitions may only be undertaken in two instances, neither of which Peace has shown to be applicable here. *See Capellan*, 975 F.2d at 70. Peace has not shown that "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations," as the Second Circuit has long held that New York's procedure for litigating Fourth Amendment claims is facially adequate. *Id.* at 70 n.1 (collecting cases); *Daily v. New York*, 388 F. Supp. 2d 238, 249 (S.D.N.Y. 2005) ("The State of New York clearly has provided defendants . . . with the necessary corrective procedures through Section 710 of the New York Criminal Procedure Law."). Therefore, because New York has provided a "corrective mechanism," Peace may only obtain habeas relief if he can establish that he was "precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Ethridge*, 49 F.4th at 684.

To establish an unconscionable breakdown, Peace would have to show that the trial court and the Appellate Division "failed to conduct a reasoned method of inquiry into relevant questions of fact and law," *Hicks*, 43 F. Supp. 3d at 231, which is a "stringent standard," *Clanton v. LaClair*, No. 14-CV-4551, 2015 WL 13832649, at *11 (S.D.N.Y. Nov. 4, 2015), *report and recommendation adopted*, 2019 WL 4688725 (S.D.N.Y. Sept. 25, 2019); *see also Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988) ("In short an unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant

15

to those fundamental notions of due process that are at the heart of a civilized society."). Peace has made no such showing here.

Peace filed both a counseled brief and a *pro se* brief in the Appellate Division that included his Fourth Amendment claim. Dkt. 14-3 at 1-33, 89-102. After Peace filed a suppression motion in the trial court, a Judicial Hearing Officer held two days of evidentiary hearings and recommended that Peace's motion to suppress be denied. *Id.* at 93-94. The trial court adopted the hearing officer's findings of fact and conclusions of law. *Id.* at 42. On appeal, the Appellate Division reviewed the denial on the merits and affirmed, providing an explanation of its reasoning. *Id.* at 120-22. Peace filed a counseled leave application to the Court of Appeals, which the Court of Appeals denied. *Id.* at 123-25, 131-32. There was no failure here "to conduct a reasoned method of inquiry into relevant questions of fact and law." *Hicks*, 43 F. Supp. 3d at 231. Furthermore, Peace's "mere disagreement with the outcome of [the] state court ruling is not the equivalent of an unconscionable breakdown." *Capellan*, 975 F.2d at 72.

Peace is therefore not entitled to relief on this claim.

## *CONCLUSION*

Peace has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, his habeas petition is denied. Additionally, I decline to issue a certificate of appealability because Peace has not made a substantial showing of the denial of a

constitutional right. *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case. The Clerk shall also mail copies of this memorandum decision and the judgment to Peace at his last known address.

SO ORDERED.

Dated:    New York, New York
          April 11, 2023

                                             _____
                                             DENNY CHIN
                                             United States Circuit Judge
                                             Sitting By Designation